# EXHIBIT A

Ventura Superior Court transmitted through eFiling 05/04/2026 04:55:33 PM

**LAUREL EMPLOYMENT LAW**
Joshua I. White (State Bar No. 278166)
josh@laurelemploymentlaw.com
Elizabeth Villarreal (State Bar No. 327937)
elizabeth@laurelemploymentlaw.com
808 Wilshire Boulevard, Suite 200
Santa Monica, CA 90401
Telephone: (323) 551-9221
Facsimile: (310) 564-4093

Attorneys for Plaintiff,
Hilda Newborn

**ELECTRONICALLY FILED**
Superior Court of California
County of Ventura
05/04/2026
K. Bieker
Executive Officer and Clerk
By: ________ Deputy Clerk
Ashley Pekarek

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF VENTURA**

HILDA NEWBORN, an Individual,

Plaintiff,

vs.

AMGEN USA INC., a Delaware Stock Corporation; and DOES 1 through 10, Inclusive,

Defendants.

Case No.: 2026CUOE065704

**COMPLAINT FOR:**

1. CFRA/FMLA Retaliation (Gov't Code § 12945.2);
2. CFRA/FMLA Interference (Gov't Code § 12945.2);
3. Age Discrimination (Gov't Code § 12940(a));
4. Retaliation for Protected Activity (Gov't Code § 12940(h));
5. Harassment and Hostile Work Environment (Gov't Code § 12940(j));
6. Failure to Prevent Discrimination, Harassment, and Retaliation (Gov't Code § 12940(k));
7. Wrongful Adverse Employment Action in Violation of Public Policy;
8. Whistleblower Retaliation (Lab. Code § 1102.5);
9. Retaliation for Exercising Labor Code Rights (Lab. Code § 98.6);
10. Negligent Hiring, Supervision, and Retention (Common Law);
11. Failure to Timely Pay Wages When Due (Lab. Code § 204);
12. Failure to Provide Accurate Itemized Wage Statements (Lab. Code § 226);
13. Failure to Maintain Required Payroll and Employment Records (Lab. Code § 1198.5);
14. Failure to Provide Employment Records Upon Request (Lab. Code §§ 226, 1198.5);

15. Unfair Business Practices (Bus. & Prof. Code §§ 17200, *et seq.*).

**Demand for Jury Trial**
[UNLIMITED JURISDICTION]

**COMES NOW** Plaintiff HILDA NEWBORN ("Plaintiff") and hereby brings this Complaint against Defendant AMGEN USA INC., and DOES 1 through 10 ("Defendants"), inclusive, and alleges as follows:

**THE PARTIES**

1. Plaintiff HILDA NEWBORN is, and at all relevant times herein has been, an individual who formerly resided in Ventura County, California, and currently resides in the State of Texas.

2. Plaintiff is informed and believes, and based thereupon alleges that at all times relevant herein, Defendant AMGEN USA INC. was a Delaware Stock Corporation, doing business in Ventura County, California.

3. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Defendants, and each of them, were the agents, employees, managing agents, supervisors, co-conspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting at least in part within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants.

4. The true names and capacities, whether a corporation, agent, individual, or otherwise, of DOES 1 through 10, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Each Defendant designated herein as a DOE is negligently or otherwise legally responsible in some manner for the events and happenings referred to herein and thereby proximately caused injuries and damages to Plaintiff as alleged herein. Plaintiff will seek leave of the Court to amend this Complaint to show their true names and capacities when the same have been ascertained.

5. At all times mentioned here, DOES 1 through 10 were the agents, representatives, employees, successors, and/or assigns of Defendants and at all times pertinent hereto were acting within the course and scope of their authority as such agents, representatives, employees, successors, and/or assigns.

6. Plaintiff is informed and believes that at all relevant times herein mentioned, Defendant and/or DOES 1 through 10 are and were corporations, business entities, individuals, and partnerships, licensed to do business and actually doing business in the State of California. As such and based upon all

the facts and circumstances incident to Defendant's business in California, Defendants are subject to the Fair Employment and Housing Act ("FEHA"), the Labor Code, and the Government Code.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction to hear this case because Plaintiff is informed and believes that the monetary damages sought in this Complaint for Defendants' conduct exceed the minimal jurisdictional limits of the Superior Court of the State of California.

9. Pursuant to the Code of Civil Procedure ("CCP") section 395(a), venue is proper in the above-entitled Court because the majority of all facts giving rise to the causes of action stated herein arose in Ventura County, California. Venue in Ventura County, California, is further proper under Government Code section 12965(b) because the unlawful practices were committed in Ventura County, California. Plaintiff worked in Ventura County, California, and Plaintiff is informed and believes that records relevant to this action are maintained in Ventura County, California.

10. Plaintiff is informed and believes that Defendants, and each of them, committed other wrongful acts or omissions of which Plaintiff is presently unaware. Plaintiff shall conduct discovery to identify said wrongful acts and will seek leave of the Court to amend this Complaint to add said acts upon discovery.

## FACTS COMMON TO ALL CAUSES OF ACTION

11. On April 16, 2018, Plaintiff began her employment with Defendants as a Sales Operations Manager, Level 5, at Defendants' headquarters in Thousand Oaks, California. Plaintiff's initial annual salary was $115,000.08. Over the course of her employment, Plaintiff progressed through multiple roles of increasing responsibility, including Marketing Operations Manager, Global Customer Capabilities Manager, and Sales Operations Senior Manager. Plaintiff supported various business units throughout her tenure, including the Inflammation Business Unit and Cardiovascular Business Unit.

12. From 2018 through 2024, Plaintiff consistently received "Successfully Meets Expectations" ratings in her annual performance reviews. Plaintiff received multiple Bravo awards from colleagues and leadership, and in 2022, she earned Q3 MVP recognition for her contributions to the Field Operations team. Plaintiff had no prior disciplinary history and had never received any warning letters or discipline notices.

13. In February 2021, Plaintiff received formal approval to work remotely through Defendants' FlexAbility program. Plaintiff's remote work arrangement was approved by management and HR, allowing her to relocate from California to Texas while maintaining her full-time position with the company.

14. For approximately five to six years prior to 2025, Plaintiff served as the primary caregiver for her mother, who suffered from serious health conditions including liver disease and Alzheimer's disease. On July 5, 2025, Plaintiff's mother passed away. Despite this loss, Plaintiff returned to work the following Monday, demonstrating her commitment to her professional responsibilities.

15. After attempting to continue working through her grief, Plaintiff recognized the need for protected leave to address her bereavement and related medical needs. In late August 2025, Plaintiff properly requested leave through Defendants' designated leave administrator, Sedgwick. Plaintiff's request was approved, and she began her leave on August 25, 2025, under both short-term disability and continuous leave provisions qualifying for protection under the California Family Rights Act, Government Code section 12945.2. Before departing, Plaintiff thoroughly documented her work and arranged proper coverage.

16. While Plaintiff was on protected leave in September 2025, Defendants uploaded a disputed mid-year review to her employee profile without notice, directly contradicting prior assurances that the review would not be entered into her personnel file. Plaintiff had submitted a formal written rebuttal to this mid-year review after being told it would not be entered into her file.

17. Plaintiff returned to work on October 6, 2025, having complied with all leave procedures and requirements. The leave was formally closed by Sedgwick on October 9, 2025. Upon Plaintiff's return from protected leave, she received no acknowledgment or support from management despite her recent bereavement and documented medical needs. Around October 8, 2025, Plaintiff was placed on sleep and anxiety medication by her doctor.

18. On October 23, 2025, a coworker received company-sent flowers following his wife's mother's passing. Despite Plaintiff's own mother's death just months earlier, Plaintiff received no such acknowledgment from Defendants.

19. On March 5, 2026, approximately five months after returning from leave, Plaintiff

received her first-ever negative annual performance review, rated "Partially Meets Expectations." This review marked a stark departure from her consistent "Successfully Meets Expectations" ratings from 2018 through 2024. The negative review was delivered in a brief call with her manager Defendant Karren Torosyan and HR representative Elizabeth Berry present.

20. On March 11, 2026, Plaintiff was placed on an open-ended Performance Improvement Plan with no defined timeline for completion. The PIP meeting again included both management and HR, but the actual PIP document was not reviewed with Plaintiff during the call and was instead sent electronically afterward for signature. The PIP cited performance deficiencies that had never been raised during prior coaching sessions or one-on-one meetings following her return from leave.

21. The PIP contained specific allegations that can be refuted with documentary evidence. The PIP alleged that Plaintiff missed a quality control meeting on January 4, 2026, and that other team members had to complete her work. However, there are time-stamped emails and text messages from that date confirming Plaintiff completed all required quality control work within the designated timeframe and sent confirmation emails to her team.

22. On the same day the PIP was issued, March 11, 2026, Plaintiff received a Bravo award from leadership recognizing her for going above and beyond to assist a colleague on her day off.

23. The retaliatory actions resulted in immediate and ongoing economic harm. Plaintiff's bonus decreased from $30,000 in March 2025 to $20,734 in March 2026. The PIP explicitly stripped Plaintiff's eligibility for future stock awards and equity grants, barred her from applying for any internal positions at Defendants, and threatened her eligibility for raises and future bonuses. These restrictions remain in effect for an indefinite period.

24. Defendants informed Plaintiff that they no longer use defined timeframes for performance improvement plans, leaving completion entirely to management's subjective discretion.

25. Defendants employ more than 10,000 employees and are subject to Government Code section 12940.

26. Plaintiff filed timely charges with the Civil Rights Department and received notices of the right to sue in a California Superior Court pursuant to Government Code section 12965(b), thereby permitting Plaintiff to bring this legal action. Plaintiff has therefore exhausted all administrative remedies

required under the Government Code. Attached hereto and incorporated herein as **Exhibit 1** is Plaintiff's Right to Sue Letter.

**FIRST CAUSE OF ACTION**

**CFRA/FMLA Retaliation**

**(Gov't Code § 12945.2)**

**(Against All Defendants and DOES 1-10)**

27. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

28. At all times herein mentioned, Government Code section 12945.2 was in full force and effect and was binding on Defendants. This statute prohibits employers from retaliating against employees for exercising their rights to medical leave.

29. Throughout the relevant time period, Plaintiff exercised her right to protected leave beginning on August 25, 2025, following the death of her mother and related medical needs, and returned to work on October 6, 2025, having complied with all required leave procedures. Upon her return, Plaintiff received no acknowledgment or support from management despite her bereavement and documented medical needs. Approximately five months after returning from leave, Plaintiff received her first-ever negative annual performance review on March 5, 2026, followed by the imposition of an open-ended performance improvement plan on March 11, 2026—a stark departure from her consistent satisfactory performance record spanning 2018 through 2024. These adverse actions eliminated Plaintiff's eligibility for stock awards, equity grants, raises, and future bonuses, and barred her from applying to internal positions, with no defined timeframe for resolution, and were issued without any documented performance coaching between Plaintiff's return from leave and the adverse employment actions, supporting that the exercise of protected leave was a motivating reason for Defendants' conduct.

30. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, in an amount to be proven at trial.

31. Defendants' actions were willful and deliberate, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages pursuant to Civil Code section 3294.

//

## SECOND CAUSE OF ACTION

**CFRA/FMLA Interference**

**(Gov't Code § 12945.2)**

**(Against All Defendants and DOES 1-10)**

32. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

33. At all times herein mentioned, Government Code section 12945.2 was in full force and effect and was binding on Defendants. This statute provides eligible employees with the right to take protected medical leave.

34. Throughout the relevant time period, Plaintiff properly requested and was approved for protected leave beginning on August 25, 2025, through Defendants' designated leave administrator, following the death of her mother and related medical needs, with the leave formally closed on October 9, 2025. While Plaintiff was on protected leave, Defendants uploaded a disputed mid-year performance review to her employee profile without notice, directly contradicting prior assurances that it would not be entered into her file, and despite Plaintiff having previously submitted a formal written rebuttal to that review. Upon Plaintiff's return from leave on October 6, 2025, Defendants provided no acknowledgment, check-in, or support to facilitate her transition. Thereafter, Defendants issued Plaintiff her first-ever negative performance review on March 5, 2026, and placed her on an open-ended performance improvement plan on March 11, 2026, restricting her eligibility for compensation, benefits, and internal career advancement—conduct that interfered with Plaintiff's rights to protected leave and the benefits associated with that leave.

35. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, in an amount to be proven at trial.

36. Defendants' actions were willful and deliberate, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages pursuant to Civil Code section 3294.

//

//

//

**<u>THIRD CAUSE OF ACTION</u>**

**Age Discrimination**

**(Gov't Code § 12940(a))**

**(Against All Defendants and DOES 1-10)**

37. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

38. At all times herein mentioned, Government Code section 12940(a) was in full force and effect and was binding on Defendants. This statute prohibits employers from discriminating against employees on the basis of age.

39. Throughout the relevant time period, Plaintiff, a member of a protected class by reason of her age, consistently performed her duties in a satisfactory manner from 2018 through 2024, received multiple recognition awards from colleagues and leadership, and had no prior disciplinary history. Despite this established record, Defendants subjected Plaintiff to adverse employment actions, including the issuance of her first-ever negative annual performance review on March 5, 2026, and the imposition of an open-ended performance improvement plan on March 11, 2026, that stripped her of eligibility for stock awards, equity grants, raises, bonuses, and the ability to apply for internal positions. The performance improvement plan relied on performance deficiencies that had never been previously identified or communicated and contained allegations that Plaintiff can refute with documentary evidence, supporting that Defendants acted adversely against Plaintiff, at least in part, because of her age.

40. By virtue of Plaintiff's age, Plaintiff is a member of a protected class under FEHA.

41. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, in an amount to be proven at trial.

42. Defendants' actions were willful and deliberate, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages pursuant to Civil Code section 3294.

//

//

//

//

**FOURTH CAUSE OF ACTION**

**Retaliation for Protected Activity**

**(Gov't Code § 12940(h))**

**(Against All Defendants and DOES 1-10)**

43. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

44. At all times herein mentioned, Government Code section 12940(h) was in full force and effect and was binding on Defendants. This statute prohibits employers from retaliating against employees for engaging in protected activities.

45. Throughout the relevant time period, Plaintiff engaged in protected activity by requesting and taking protected leave beginning on August 25, 2025, returning to work on October 6, 2025, in compliance with all applicable procedures, and submitting a formal written rebuttal to a disputed mid-year review that had been uploaded to her personnel file during her leave without prior notice and in contradiction of prior assurances by management. Following this protected activity, Defendants issued Plaintiff her first-ever negative annual performance review on March 5, 2026, and placed her on an open-ended performance improvement plan on March 11, 2026, that restricted her eligibility for compensation, benefits, and career advancement opportunities. The temporal proximity between Plaintiff's protected activity and these adverse actions, together with the absence of any prior coaching, feedback, or documentation of performance concerns between her return and the adverse actions, supports that her protected activity was a motivating reason for Defendants' conduct.

46. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, in an amount to be proven at trial.

47. Defendants' actions were willful and deliberate, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages pursuant to Civil Code section 3294.

//

//

//

//

**<u>FIFTH CAUSE OF ACTION</u>**

**Harassment and Hostile Work Environment**

**(Gov't Code § 12940(j))**

**(Against All Defendants and DOES 1-10)**

48. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

49. At all times herein mentioned, Government Code section 12940(j) was in full force and effect and was binding on Defendants. This statute prohibits harassment and the creation of a hostile work environment on the basis of protected characteristics.

50. Throughout the relevant time period, Defendants subjected Plaintiff to a hostile work environment by failing to provide any acknowledgment or support upon her return from protected leave on October 6, 2025, despite her recent bereavement and documented medical needs, while extending workplace acknowledgment and recognition to similarly situated employees outside her protected class, including sending flowers to a coworker following a comparable personal loss in October 2025. Defendants also uploaded a disputed performance review to Plaintiff's personnel file during her leave in violation of prior assurances, issued Plaintiff her first-ever negative annual performance review on March 5, 2026, placed her on an open-ended performance improvement plan on March 11, 2026, containing allegations Plaintiff can refute with documentary evidence, and thereafter attended Plaintiff's standing team meetings in a supervisory capacity not employed before the adverse actions began. The cumulative effect of this conduct altered the conditions of Plaintiff's employment and created a hostile work environment based on her protected characteristics.

51. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, in an amount to be proven at trial.

52. Defendants' actions were willful and deliberate, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages pursuant to Civil Code section 3294.

//

//

//

**SIXTH CAUSE OF ACTION**

**Failure to Prevent Discrimination, Harassment, and Retaliation**

**(Gov't Code § 12940(k))**

**(Against All Defendants and DOES 1-10)**

53. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

54. At all times herein mentioned, Government Code section 12940(k) was in full force and effect and was binding on Defendants. This statute requires employers to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation.

55. Throughout the relevant time period, Defendants were aware, or should have been aware, of the discriminatory, harassing, and retaliatory conduct directed at Plaintiff following her protected leave and her protected activity, including the uploading of a disputed mid-year review to her file during her leave, the failure to acknowledge or support Plaintiff upon her return from leave on October 6, 2025, the issuance of a first-ever negative performance review on March 5, 2026, and the imposition of an open-ended performance improvement plan on March 11, 2026, containing pretextual allegations. Despite this knowledge, Defendants failed to take reasonable steps to prevent or correct such conduct, failed to ensure that adverse employment actions were supported by documented and legitimate performance concerns, and failed to investigate or remediate Plaintiff's concerns, allowing the discriminatory, harassing, and retaliatory conduct to continue unchecked.

56. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, in an amount to be proven at trial.

57. Defendants' actions were willful and deliberate, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages pursuant to Civil Code section 3294.

**SEVENTH CAUSE OF ACTION**

**Wrongful Adverse Employment Action in Violation of Public Policy**

**(Against All Defendants and DOES 1-10)**

58. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

59. Under California law, employers are prohibited from taking adverse employment actions against employees who violate fundamental public policies established by constitutional, statutory, or regulatory provisions. Defendants' actions toward Plaintiff constituted such unlawful adverse employment actions as they contravened these fundamental public policies.

60. Throughout the relevant time period, Defendants took adverse employment actions against Plaintiff in violation of fundamental public policies established by the constitutional and statutory laws of California, which protect employees who exercise rights to protected leave, engage in protected activity, and oppose unlawful employment practices. Specifically, following Plaintiff's protected leave beginning August 25, 2025, and her return on October 6, 2025, Defendants issued Plaintiff her first-ever negative annual performance review on March 5, 2026, placed her on an open-ended performance improvement plan on March 11, 2026, relying on performance deficiencies never previously identified or communicated, and stripped Plaintiff of eligibility for stock awards, equity grants, raises, bonuses, and the ability to seek internal career advancement, with no defined timeframe for resolution. These adverse actions contravened the fundamental public policies embodied in California law protecting employees from retaliation for exercising their legally protected rights.

61. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, in an amount to be proven at trial.

62. Defendants' actions were willful and deliberate, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages pursuant to Civil Code section 3294.

**<u>EIGHTH CAUSE OF ACTION</u>**

**Whistleblower Retaliation**

**(Lab. Code § 1102.5)**

**(Against All Defendants and DOES 1-10)**

63. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

64. At all times herein mentioned, Labor Code section 1102.5 was in full force and effect and was binding on Defendants. This statute prohibits employers from retaliating against employees who disclose violations of state or federal laws, rules, or regulations, or who refuse to participate in activities

that violate them.

65. Throughout the relevant time period, Plaintiff made disclosures to Defendants' management and human resources personnel regarding conduct she reasonably believed to be unlawful, including reporting that a disputed mid-year performance review had been uploaded to her personnel file during her protected leave in direct contradiction of prior assurances from management that it would not be entered. After making these disclosures through formal written means, Defendants issued Plaintiff her first-ever negative annual performance review on March 5, 2026, and placed her on an open-ended performance improvement plan on March 11, 2026, containing allegations Plaintiff can refute with documentary evidence, that stripped her of eligibility for compensation increases, stock awards, equity grants, and internal career advancement. The sequence of events and absence of any documented performance concerns during the period between Plaintiff's return from leave and the adverse actions supports that Defendants intentionally retaliated against Plaintiff because she disclosed conduct she reasonably believed to be unlawful.

66. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, in an amount to be proven at trial.

67. Defendants' actions were willful and deliberate, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages pursuant to Civil Code section 3294.

## NINTH CAUSE OF ACTION

**Retaliation for Exercising Labor Code Rights**

**(Lab. Code § 98.6)**

**(Against All Defendants and DOES 1-10)**

68. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

69. At all times relevant herein, Labor Code section 98.6 was in full force and effect and was binding on Defendants. This statute prohibits employers from discriminating against, retaliating against, or taking any adverse action against employees for exercising their rights under the Labor Code.

70. Throughout the relevant time period, Plaintiff exercised her rights under the Labor Code, including her right to protected leave, and reported what she reasonably believed to be unlawful conduct

by Defendants. Defendants thereafter took adverse employment actions against Plaintiff, including issuing a negative performance review on March 5, 2026, placing her on an open-ended performance improvement plan on March 11, 2026, and restricting her eligibility for compensation, benefits, and internal career advancement, with no defined timeframe for the resolution of those restrictions. These adverse actions occurred in connection with Plaintiff's exercise of her rights under the Labor Code, supporting that Defendants took such actions in retaliation for Plaintiff's exercise of legally protected workplace rights.

71. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, in an amount to be proven at trial.

**<u>TENTH CAUSE OF ACTION</u>**

**Negligent Hiring, Supervision, and Retention**

**(Common Law)**

**(Against All Defendants and DOES 1-10)**

85. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

86. Defendants had a duty to exercise reasonable care in hiring, supervising, and retaining their employees, including managers and supervisors who had authority over the Plaintiff.

87. Defendants breached this duty by negligently hiring, supervising, and retaining employees who engaged in unlawful conduct against Plaintiff. Defendants knew or should have known that their employees were likely to be unfit and engage in unlawful conduct.

88. As a direct and proximate result of the Defendants' negligent hiring, supervision, and retention, the Plaintiff has suffered and continues to suffer substantial damages, the amount of which will be proven at trial.

89. Defendants' actions were willful and deliberate, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages pursuant to Civil Code section 3294.

//

//

//

**ELEVENTH CAUSE OF ACTION**

**Failure to Timely Pay Wages When Due**

**(Lab. Code § 204)**

**(Against All Defendants and DOES 1-10)**

90. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

91. At all times herein mentioned, Labor Code section 204 was in full force and effect and was binding on Defendants. This statute requires employers to pay wages earned in accordance with a regular pay schedule.

92. Throughout the relevant time period, Defendants willfully and deliberately failed to pay Plaintiff the wages owed on the designated paydays by withholding earned compensation beyond the regular payroll schedule and ignoring repeated requests for timely payment.

93. Defendants intentionally maintained payroll practices that resulted in persistent late payments, directly causing Plaintiff to experience ongoing financial loss.

94. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, in an amount to be proven at trial.

**TWELFTH CAUSE OF ACTION**

**Failure to Provide Accurate Itemized Wage Statements**

**(Lab. Code § 226)**

**(Against All Defendants and DOES 1-10)**

95. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

96. At all times herein mentioned, Labor Code section 226 was in full force and effect and was binding on Defendants. This statute requires employers to provide accurate, itemized wage statements that contain specified information.

97. Throughout the relevant time period, Defendants failed to provide Plaintiff with accurate, itemized wage statements that accurately reflected all hours worked, applicable hourly rates, gross wages earned, net wages earned, all deductions, and other required information.

98. Defendants' failure to provide accurate wage statements was knowing and intentional.

99. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages and is entitled to recover penalties under Labor Code section 226.3.

**<u>THIRTEENTH CAUSE OF ACTION</u>**

**Failure to Maintain Required Payroll and Employment Records**

**(Lab. Code § 1198.5)**

**(Against All Defendants and DOES 1-10)**

100. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

101. At all times herein mentioned, Labor Code section 1198.5 was in full force and effect and was binding on Defendants. These statutes require employers to maintain accurate payroll and employment records.

102. Throughout the relevant time period, Defendants failed to maintain accurate records of hours worked, meal and rest periods, and other required employment information.

103. Defendants' failure to maintain the required records was willful and deliberate, as evidenced by their systematic manipulation of time records and payroll documentation.

104. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, in an amount to be proven at trial.

**<u>FOURTEENTH CAUSE OF ACTION</u>**

**Failure to Provide Employment Records Upon Request**

**(Lab. Code §§ 226, 1198.5)**

**(Against All Defendants and DOES 1-10)**

105. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

106. At all times herein mentioned, Labor Code sections 226 and 1198.5 were in full force and effect and were binding on Defendants. These statutes require employers to provide employees with copies of employment records upon request.

107. Defendants failed to provide Plaintiff with complete and accurate employment records

upon request, including accurate time records and wage statements. These records were requested by Plaintiff's Attorneys on April 15, 2026.

108. Defendants' failure to provide employment records was willful and deliberate.

109. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages and is entitled to statutory penalties according to proof at trial.

**FIFTEENTH CAUSE OF ACTION**

**Unfair Business Practices**

**(Bus. & Prof. Code §§ 17200, *et seq.*)**

**(Against All Defendants and DOES 1-10)**

110. Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

111. Business and Professions Code sections 17200, *et seq.* prohibit unfair competition, including any unlawful, unfair, or fraudulent business practices.

112. Throughout the relevant time period, Defendants willfully engaged in unfair and unlawful practices by imposing policies that resulted in the loss of earned compensation and benefits.

113. Defendants intentionally maintained business practices that systematically caused Plaintiff to lose money and property. These ongoing actions resulted in direct financial harm to Plaintiff.

114. These actions constitute unfair business practices in violation of Business and Professions Code sections 17200, *et seq.*

115. Pursuant to Business and Professions Code section 17203, Plaintiff seeks restitution of all benefits Defendants have received from their unfair and unlawful business practices.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a. For general and special damages, including past and future lost earnings, employment benefits, and damages for emotional distress, humiliation, and mental anguish;

b. For equitable and injunctive relief as the Court deems appropriate;

c. For unpaid wages and other earned compensation pursuant to Labor Code section 204;

d. For statutory penalties pursuant to Labor Code sections 226, 226.3, 1198.5, and any others

that may be applicable;

e. For civil penalties pursuant to Labor Code sections 1102.5 and 98.6;

f. For restitution of all benefits Defendants acquired through unfair business practices pursuant to Business and Professions Code section 17203;

g. For reasonable attorneys' fees pursuant to Government Code section 12965(b) and Labor Code sections 1102.5, 98.6, 226, and 1198.5;

h. For prejudgment interest pursuant to Civil Code section 3287 and Labor Code section 218.6;

i. For punitive damages pursuant to Civil Code section 3294;

j. For costs of suit incurred herein; and

k. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action and claims to which Plaintiff has a right to a jury trial.

Dated: May 4, 2026.

**LAUREL EMPLOYMENT LAW**

Joshua I. White, Esq.
Elizabeth Villarreal, Esq.
Attorneys for Plaintiff, Hilda Newborn